IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILLIAM M., on behalf of
VICKI M. (*Deceased*),             §
      Plaintiff,             §
              §
v.                                 §         No. 3:25-CV-1714-BW
              §
COMMISSIONER OF THE SOCIAL         §
SECURITY ADMINISTRATION,           §
      Defendant.             §

## MEMORANDUM OPINION AND ORDER

Plaintiff William M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), on behalf of his deceased wife, Vicki M. ("Claimant"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Act.  (*See* Dkt. No. 1.)  The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(c) and Special Order No. 3-350.  (*See* Dkt. Nos. 1, 6.)

Plaintiff filed a brief on appeal (Dkt. No. 16) ("P. Br."), to which the Commissioner filed a brief in response (Dkt. No. 19 ("D. Br.")), and Plaintiff filed a reply brief (Dkt. No. 20) ("Reply").  After considering the pleadings, briefs, and administrative record, the Court concludes that the Commissioner's decision must be **AFFIRMED**.

## I.  BACKGROUND

On January 6, 2022, Claimant protectively filed an application for DIB, alleging disability beginning March 31, 2021.  (*See* Dkt. No. 11 ("Tr.") 14, 171-75.) In her application, Claimant alleges disability due to "(1) Coronary Artery Disease; (2) Diabetes Mellitus – Type 2; (3) Chronic Obstructive Pulmonary Disease ("COPD") - Emphysema; (4) Peripheral Neuropathy Hands, Feet; and (5) Degenerative Disc Disease (Spondylosis) Lower Back."  (*See* Tr. 238.)  Her claim was denied initially on March 17, 2022, (Tr. 91), and again upon reconsideration on November 10, 2023 (Tr. 92).  Claimant passed away on September 28, 2023 (Tr. 58-63), after which Plaintiff (her surviving spouse), as the substituted party, timely requested an administrative hearing.  (Tr. 81-83, 129-138.)

On August 22, 2024, Administrative Law Judge Kevin Batik ("the ALJ") held a telephonic hearing, at which all parties appeared by telephone.  (Tr. 14.)  Plaintiff was represented at the hearing by Paige Lynn, an attorney.  (*Id*.)  Michelle Aliff, an impartial vocational expert, also appeared and testified at the hearing.  (*Id*.)  The ALJ issued an unfavorable decision on August 22, 2024, finding Claimant not disabled from March 31, 2021, through September 28, 2023.  (Tr. 14-26.)  On May 13, 2025, the Appeals Council denied Claimant's request for further review of the ALJ's decsion.  (Tr. 1-6.)  The ALJ's August 22, 2024  decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

2

## II.   LEGAL STANDARDS

### A.    District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v.*

*Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  The Court "may affirm only on the grounds that the Commissioner stated for [the] decision."  *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'"  *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).  "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation."  *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)).  "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'"  *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).  "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error."  *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

**B.     The Sequential Evaluation Process**

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability."  *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)). On the first four steps of the analysis, the claimant has the initial burden of proving she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id*. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled.  *Id.* § 404.1509.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits her to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then she is not disabled.  *Id.*  If an individual's impairment precludes her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 22, 2024 decision:

1.  The claimant met the insured status requirements of the Social Security Act through June 30, 2026.

2.  The claimant did not engage in substantial gainful activity after March 31, 2021, the alleged onset date  (20 CFR 404.1571 *et seq.*).

3. The claimant had the following severe impairments: diabetes mellitus, hypertension, coronary artery disease, congestive heart failure, degenerative disc disease of the lumbar spine, and generalized anxiety disorder/panic disorder (20 CFR 404.1520(c)).

4. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant is limited to the occasional climbing of ramps or stairs, and balancing; also occasional exposure to dusts, fumes or similar pulmonary irritants; was precluded from climbing ladders, ropes, or scaffolding; and is limited to understanding, remembering, and carrying out detailed but not complex tasks and instructions.

6. The claimant was capable of performing past relevant work as an administrative clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, from March 31, 2021, through the date of death (20 CFR 404.1520(f)).

(Tr. 14-26.)

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on January 6, 2022, the claimant is not disabled under sections 216(i) and 223(d) of the Act.  (Tr. 26.)

---

[1] 20 C.F.R. § 404.1567(b): Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

## IV. ANALYSIS

Plaintiff raises two arguments on appeal—both contending that the ALJ failed to properly evaluate medical opinion evidence, and therefore, reached a decision that is not supported by substantial evidence. (*See generally* P. Br.) First, Plaintiff asserts that the ALJ failed to properly evaluate the medical opinion of consultative psychological examiner by Gayle Pitcher, Ph.D. ("Dr. Pitcher"). (*See id*. at 3-9.) Plaintiff next contends that the ALJ failed to adhere to his affirmative duty to develop the record with an updated medical expert opinion regarding Claimant's physical impairments. (See *id*. at 9-11.)

The Commissioner argues in response that the ALJ properly evaluated Dr. Pitcher's medical opinion, along with the doctor's own mental status examination findings and other relevant medical evidence and reasonably found Dr. Pitcher's opinion generally unpersuasive. (*See* D. Br. at 2-5.) With respect to the ALJ's physical RFC finding, the Commissioner argues that the ALJ was not required to obtain an updated medical expert opinion to evaluate Claimant's physical impairments because the ALJ properly reviewed and evaluated all of the evidence of record, including evidence following Claimant's myocardial infarction in March 2023. (*See id*. at 5-10.)

The Court has reviewed the briefing and the administrative record and determines that the ALJ weighed "all the relevant evidence in the [Claimant's] case record," 20 C.F.R. § 404.1545(a), and reasonably determined that the Claimant had the RFC to perform a reduced range of light work with additional limitations,

including postural limitations and limiting Claimant to understanding, remembering, and carrying out detailed but not complex tasks and instructions. (Tr. 20.) Accordingly, the ALJ's decision is supported by substantial evidence.

## A.    Relevant Medical Evidence

The ALJ noted that Claimant had a long history of heart disease. (Tr. 22.) She underwent a coronary artery bypass in 2012 and had a stent installed. (Tr. 441.) She sought emergency care for shortness of breath in November 2021. (Tr. 453.) She was diagnosed with pneumonia and influenza and admitted to the hospital for six days. (Tr. 439.) An examination at discharge from the hospital noted normal musculoskeletal range of motion, with normal strength, normal heart rate and rhythm, and lungs clear of auscultation. (*Id.*) Claimant's A1c was measured at 5.4. (Tr. 440.)

The ALJ also noted that Claimant reported suffering from back pain. (Tr. 22.) Treatment notes from January 2022 indicated that Claimant reported constant low back pain radiating through to her leg with cramping and numbness. (Tr. 850, 1029.) X-rays noted degenerative disc disease at L4-5 with fact arthropathy, though it also noted no instability on flexion and extension. (Tr. 851.) It also noted a healed prior L5-S1 fusion and some facet arthropathy. (*Id.*) Physical examination findings noted slightly limited range of motion, and radiculopathy, however it also indicated that the claimant's strength was improving in her bilateral lower extremities. (*Id.*) Claimant's blood pressure was measured at 123/59. Claimant received a lumbar transforaminal epidural steroid injection in March 2022. (Tr. 1019.) Physical

examination during this period noted mildly antalgic gait and pain upon back flexion, however it also noted 5/5 strength in Claimant's upper and lower extremities throughout. (Tr. 1029.)

Treatment notes from May 2022 note that Claimant reported no dizziness, chest pain, shortness of breath, or palpitations. (Tr. 880.) Her last A1c result was noted as 5.7, and her blood pressure was measured at 119/69. (Tr. 880-81.) Physical examination findings noted that Claimant ambulated normally, had normal motor strength and muscle tone, and showed normal movement of all extremities. (Tr. 881.)

In March 2023, Claimant received emergency treatment for left-sided chest pain radiating to her back and left arm for the prior three days. (Tr. 603.) Her chest x-ray showed cardiomegaly and mild pulmonary edema, and cardiac catheterization noted multiple occlusions. (Tr. 611.) Claimant's blood pressure upon admission was 106/51 but stabilized to 142/69 through the course of treatment. (Tr. 606, 619.) Claimant was diagnosed with non-ST elevated myocardial infarction. (Tr. 603, 610.)

In May 2023, the Claimant's blood pressure was measured at 114/70. (Tr. 1232.) The Claimant reported muscle aches and weakness, however a physical examination noted normal gait, strength, and tone, as well as no motor deficits. (Tr. 1236.) Claimant passed away on September 28, 2023. (Tr. 22.)

Regarding the Claimant's mental impairments, a psychiatric examination in 2021 noted that the Claimant was cooperative with appropriate mood and affect. (Tr. 439.)

Dr. Pitcher conducted a consultative psychological examination on August 4, 2022. (Tr. 868-73.) Claimant reported being diagnosed in the late 80s and 90s with an unspecified psychiatric/cognitive disorder, but she denied past ongoing mental health and psychiatric care. (Tr. 868.) When asked about her current psychiatric problems, Claimant spontaneously reported some improvement in anxiety and fewer panic attacks, as her medication had been effective. (Tr. 869.) She denied feeling sad and depressed and denied appetite problems, but she reported sleep problems due to leg pain. (*Id.*)

On mental status examination, Dr. Pitcher noted that Claimant presented as serious but friendly and was cooperative throughout the exam. (Tr. 870.) Dr. Pitcher also noted that Claimant appeared to have a normal activity level and attention span, average vocabulary, and normal speech with no language deficits. (Tr. 870-71.) Claimant's immediate and medium-term memory were noted as intact, as she was able to recall three of three objects after a five-minute interval, and her concentration, attention, judgement, and insight were noted as adequate through the examination. (Tr. 871.)

A psychiatric examination in 2023 noted that Claimant was cooperative with appropriate mood and affect, and normal judgment. (Tr. 446.) The ALJ also noted that Claimant has reported panic or anxiety attacks to various medical care providers throughout the record. (Tr. 23; *see, e.g.*, Tr. 806, 863, 868, 1015.)

11

**B.     Relevant Opinion Evidence**

On September 28, 2022, state agency medical consultant Laurence Ligon, M.D. ("Dr. Ligon"), independently examined the evidence of record as of that date and found that Claimant was limited to light work, occasional balancing and climbing of ramps and stairs, and never climbing ladders/ropes/scaffolds.  (Tr. 863.) The ALJ noted that this finding is supported with citations to the record and consistent with the medical record insofar as it shows a history of chronic pain and dizziness/weakness upon exertion.  (Tr. 22; *see, e.g.*, 439-51, 850- 52.)  The ALJ noted, however, that the record is also consistent with additional environmental limitations in light of Claimant's history of cardiovascular impairment, respiratory difficulty, and pulmonary edema.  (Tr. 23; *see, e.g.*, Tr. 603, 611.)

State agency psychological examiner Margaret S. Meyer, M.D. ("Dr. Meyer"), found that Claimant can understand, remember, and carryout detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting.  (Tr. 864.)  The ALJ similarly noted that this finding is supported with citations to the record, and it is consistent with the record insofar as the record shows some mild-to-moderate cognitive impairments arising primarily from anxiety/panic disorder.  (Tr. 23; *see, e.g.*, Tr. 806, 863, 868-72, 1015.)

At the reconsideration review level, the state agency medical consultant and state agency psychological consultant concluded there was insufficient evidence to

assess the case due to the claimant having passed away with no updated medical records having been submitted.  (Tr, 23.)

Dr. Pitcher—whose examination findings are summarized above—opined the following:  "It appears that Vicki is unlikely to have the ability to sustain concentration and persist in work related activity at a reasonable pace due to anxiety; and it appears unlikely that Vicki could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting."  (Tr. 873.)

**C.    The ALJ's RFC Finding was Supported by Substantial Evidence.**

RFC is what an individual can still do despite her limitations.  Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id*.; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id*.  The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and it is based upon all of the relevant evidence in the case record.  *Id*. at 3-6.  The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record.  20 C.F.R. § 404.1546(c); *see also Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained

work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* SSR 96-8p, 1996 WL 374184, at *5.  The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence.  *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").  In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### 1. The ALJ appropriately evaluated Dr. Pitcher's medical opinion and reasonably found it "generally unpersuasive."

The ALJ considered Dr. Pitcher's August 4, 2022, consultative examination report and evaluated the required factors of supportability and consistency. (Tr. 19, 23-24, 867-874.) *See* 20 C.F.R. § 404.1520c. First, the ALJ considered Dr. Pitcher's own mental status examination findings and explained that her opinion was not supported by her examination findings or the narrative report. (Tr. 24, 870-872). *See Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *3 (5th Cir. July 12, 2023) ("ALJ properly used mental status examinations as part of his decision-making process."). As the ALJ explained, Dr. Pitcher's report described Claimant's attention as adequate, which is inconsistent with the conclusion that Claimant could not sustain or persist in work-related activities. (Tr. 24.) Similarly, Dr. Pitcher observed that Claimant engaged in reciprocal conversation and presented herself as friendly and cooperative during the exam and when interacting with other healthcare professionals, which is inconsistent with Dr. Pitcher's conclusion that Claimant would "unlikely" be able to maintain "effective social interaction on a consistent and independent basis" with others in a work setting. (Tr. 23-24, 439, 446, 870, 873.)

The ALJ also pointed to information from other sources. (Tr. 19, 24.) For example, state agency medical consultant Dr. Meyer considered Dr. Pitcher's report when she reviewed the record in September 2022 and explained that Dr. Pitcher's comments on functional capacity were not supported by the overall evidence of record and thus were not persuasive. (Tr. 861.) Evaluating evidence and resolving

15

conflicts is the role of the ALJ, and here, the ALJ reasonably found Dr. Meyer's opinion "persuasive" (Tr. 23, 864), while finding Dr. Pitcher's opinion "generally unpersuasive" (Tr. 24, 873.)  "As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions."  *Vernetta Lynn J. v. O'Malley*, No. 4:23-CV-4399, 2025 WL 1485865, at *4 (S.D. Tex. Jan. 8, 2025) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

Although Plaintiff takes issue with the ALJ's discussion of the supportability and consistency factors in his evaluation of Dr. Pitcher's opinion, the ALJ discussed Dr. Pitcher's consultative examination and reasonably compared her opinion with other relevant medical evidence and Dr. Pitcher's own findings and narrative.  (Tr. 23-24).  "While the ALJ must explain how they considered the supportability and consistency factors for a medical source's medical opinions, there are no magic words or specific amount of explanation required."  *Nancy S. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-429-D-BK, 2023 WL 6299864, at *5 (N.D. Tex. Sept. 7, 2023) (quotation marks, alteration brackets, and citation omitted), *accepted*, 2023 WL 6299840 (N.D. Tex. Sept. 27, 2023).  The ALJ was not required to use specific language if his discussion of these factors "permit[ted] meaningful judicial review."  *Alma H. v. Comm'r, Soc. Sec. Admin.*, No. 3:24-cv-1895-BK, 2025 WL 2592525, at *4 (N.D. Tex. September 5, 2025) (quotation marks and citation omitted).  Contrary to Plaintiff's argument, this is precisely that the ALJ did in this case.  The ALJ

evaluated Dr. Pitcher's consultative opinion in accordance with the requirements of 20 C.F.R. § 404.1520c.  Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Pitcher's opinion.

### 2. The ALJ was not required to obtain an updated medical expert opinion.

Plaintiff next argues that the ALJ failed to adhere to his affirmative duty to develop the record with an updated medical expert opinion to assess Claimant's physical impairments.  (*See* P. Br. at 9-15.)   The Fifth Circuit has described the duty to fully and fairly develop the record as requiring that the ALJ reach "an informed decision based on sufficient facts."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citation omitted).  But that duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001).  Plaintiff acknowledges that additional records were submitted after Claimant passed away in September 2023 and after denial at the reconsideration level in November 2023 (*see, e.g.*, Tr. 58-60, 1278-90, 1292-1324) and does not suggest that the medical records are incomplete. (*See* P. Br. at 10-11.)

Upon review, the Court concludes that the record before the ALJ included sufficient evidence for the ALJ to make an informed decision as to the Claimant's disability status.  The ALJ found that Claimant had severe impairments that resulted in exertional and nonexertional functional limitations.  (Tr. 20.)  In support of his RFC finding, the ALJ considered the objective evidence and physical examination findings, as well as Dr. Ligon's September 2022 report, noting generally

17

unremarkable physical examination findings, including normal gait, normal strength, and no substantial neurological or motor deficits.   (Tr. 21-23, 1236-37.)

The ALJ also considered Claimant's myocardial infarction in March 2023 and subsequent medical records thereafter.  (Tr. 22.)  In particular, the ALJ noted that a March 24, 2023 echocardiogram revealed mildly depressed left ventricle systolic function with an ejection fraction of 51 percent (Tr. 22, 1235), and a May 17, 2023 treatment record from Louis Cristol, M.D. ("Dr. Cristol") documented generally unremarkable physical examination findings (Tr. 22, 1236-1237).  The ALJ noted that the May 2023 examination revealed normal gait, normal strength and tone, and no motor deficits.  (Tr. 22, 1237.)  Although Claimant reported muscle aches and weakness, and difficulty walking, she also reported "no arm pain on exertion, no shortness of breath when walking, no shortness of breath when lying down, no palpitations, no known heart murmur, and no ankle swelling."  (Tr. 22, 1236.)

On physical examination, Dr. Cristol documented unremarkable lung and cardiovascular examinations and described Claimant's hypertension and heart impairments as "clinically/symptomatically stable."  (Tr. 22, 1236-37.)  The May 17, 2023 treatment record from Dr. Cristol indicated that Claimant was to see him again in six months, "on or around November 17, 2023" (Tr. 1237), which  provides further evidence to support the ALJ's finding that Claimant did not have greater functional limitations, beyond the limitations specified in the RFC finding, that lasted or were expected to last a duration of twelve months (Tr. 20, 22).  *See* 20 C.F.R. § 404.1505 (defining "disability" as the inability to engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months).

Plaintiff's suggestion that the ALJ could not review and evaluate Claimant's 2023 medical records without having them reviewed first by an additional medical expert (*see* P. Br. at 10-11) is incorrect.  The ALJ was not precluded from reviewing and evaluating the objective medical evidence as Plaintiff suggests.  *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) ("It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)); SSR 96-8p, 1996 WL 374184, at *8 n.4 (an RFC assessment is an administrative finding of fact); *see also Barrett v. Barnhill*, 906 F.3d 340, 343 (5th Cir. 2018) ("[E]xperienced ALJs can draw their own conclusions based on accurate medical information."); *Hernandez v. O'Malley*, No. 5:23-CV-1403, 2025 WL 899971, at *3 (W.D. Tex. Feb. 27, 2025) (explaining the difference between objective medical evidence, which an ALJ is authorized to interpret, and raw medical data, which he is not); *Moore v. Saul*, No. 3:20-CV-161, 2022 WL 987735, at * 3 (N.D. Miss. Mar. 31, 2022) (explaining that "raw medical evidence" refers to evidence that does not permit "common-sense judgments about functional capacity" and instead requires the ALJ to "overstep the bounds of a lay person's competence and render a medical judgment") (citing *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)).

19

In this case, the ALJ did not purport to interpret an EKG tracing or an x-ray film and did not purport to interpret complex and technical medical evidence or raw data. *See Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023) (unpublished) (rejecting claim that ALJ was drawing medical conclusions from raw medical data). Rather, the ALJ noted generally unremarkable physical examination findings and pointed to May 2023 findings of normal gait, strength, and tone, as well as no motor deficits, to make common-sense judgments about Claimant's functional capacity. (Tr. 22, 1236-37.) Accordingly, the Court finds no error in the ALJ's evaluation of the 2023 medical evidence, and substantial evidence supports the ALJ's finding that Claimant did not have greater functional limitations, beyond those specified in the RFC finding, that lasted or were expected to last a duration of twelve months. (Tr. 20, 22.)

Under the applicable substantial evidence standard, whether it might be possible to evaluate evidence differently and/or possibly even reach a different conclusion is immaterial. *See* 42 U.S.C. § 405(g). The Fifth Circuit has held that for there to be a finding of no substantial evidence, there must be "a conspicuous absence of credible choices or no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (internal quotations and citation omitted). Such is not the case here.

Based on the foregoing, Plaintiff has failed to demonstrate either that improper standards were used to evaluate the evidence or that the final decision was not supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is **AFFIRMED**, and this case is **DISMISSED**

**WITH PREJUDICE**.

**SO ORDERED** on May 29, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE